AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Maryland

FEB 1 0 2015

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| United States of America<br>v.<br>Kathryn Inyang<br>a/k/a "Kathryn Simon-Ogan"<br>a/k/a "Kathryn N. Ukpeh"<br><br>*Defendant(s)* | Case No.<br><br>**15-0247SAG** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 2007 to September 2012__ in the county of __Baltimore City and others__ in the
_____ District of __Maryland__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1347 | Health Care Fraud |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Jason Marrero, HHS OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 10, 2015

_____
*Judge's signature*

City and state: Baltimore, Maryland

Stephanie A. Gallagher, U.S. Magistrate Judge
*Printed name and title*

Your affiant, Jason Marrero, Special Agent of the United States Department of Health & Human Services, Office of Inspector General ("HHS/OIG"), being duly sworn, deposes and states as follows;

## I. Introduction

1. Your affiant is employed as a Special Agent with the HHS/OIG, and is an investigative or law enforcement officer within the meaning of 18 U.S.C. Section 2510(7); that is, an officer of the United States Government empowered by law to conduct investigations of and to make arrests for offenses committed against the United States, including violations of 18 U.S.C. Section 1347 (Health Care Fraud). Your affiant, Jason Marrero, has been a sworn member of the HHS/OIG since 1998, and has been assigned to the Columbia, Maryland Field Office since 2005.

2. Your affiant has participated in numerous investigations involving health care fraud. Your affiant routinely investigates health care fraud along with other state and federal law enforcement officers including the State of Maryland Medicaid Fraud Control Unit ("MD MFCU") and the Federal Bureau of Investigation ("FBI"). Your affiant has been the affiant on health care fraud warrants, and has assisted in the execution of numerous searches, arrests and seizure warrants involving health care fraud schemes.

3. The statements contained in this Affidavit are based in part on information provided by the MD MFCU, the FBI, the HHS/OIG and a stipulated Statement of Facts signed by Kathryn Inyang on December 8, 2014; as well as my work experience as a Special Agent of the HHS/OIG for the past sixteen years working health care fraud investigations.

4. Based on evidence developed during the course of this investigation and outlined in part below, your affiant submits that the facts set forth in this Affidavit establish that there is probable cause to believe that within the District of Maryland, Kathryn Inyang, defrauded the Maryland Medicaid program, in violation of Title 18, U.S.C. Section 1347.

**Health Care Fraud**

1

5. Title 18, U.S.C. Section 1347 - Health Care Fraud, makes it a felony offense for any person to knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program. The State of Maryland Medicaid Program ("Medicaid") is a health care benefit program under 18 U.S.C. Section 24(b); that is, a public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual.

### Maryland Autism Waiver Program and Medicaid

6. The Maryland Autism Waiver Program ("the Program") is administered by the Maryland State Department of Education ("MSDE"), under the auspices of the Maryland Department of Health and Mental Hygiene ("DHMH"). The Program allows eligible children with autism spectrum disorder (hereafter "participants") to receive necessary services until age 21 so that they may remain in their homes and communities. Program providers submit bills to Medicaid, which pays for the services with federal and state funds. Medicaid reimburses only for reasonable and necessary services that are actually rendered and billed for the level of service and amount of time actually provided and will only pay providers who complete and sign a Medicaid provider application and obtain a Medicaid provider number.

7. The Code of Maryland Regulations ("COMAR") establish conditions for participation in the Program. The type and scope of Program services are determined for each individual participant based on a plan of care developed by a multidisciplinary team convened by the local school system or local lead agency and familiar with the participant and his or her Individualized Education Plan (IEP). COMAR identifies four categories of services that are covered by Medicaid under the Program and limits the type of services that can be billed for a child on a daily, weekly, or annual basis: *Therapeutic Integration* (TI), not to exceed 4 hours per day and 20 hours per week per participant; *Intensive Individual Support Services* (IISS), not to exceed 25

2

hours weekly per participant. COMAR further specifies that IISS and Respite be provided on a one-to-one basis. These services are designed and intended to foster the development of skills and strategies in activities of daily living, recreation, communication, behavior management, and socialization to support participants living at home and in their communities.

### Investigation

Background

8. The subject of this arrest warrant is Kathryn N. INYANG ("INYANG"), also known as Kathryn Simon-Ogan and Kathryn N. Ukpeh, born January 1962, with three associated Social Security account numbers \*\*\*-\*\*-0013, \*\*\*-\*\*-7602, and \*\*\*-\*\*--3225. INYANG's last known home address 3744 Colliers Drive, Edgewater, Maryland 21037.

9. INYANG was the President of Trinity Healthcare Services, Inc. ("Trinity"), a Maryland corporation. Trinity operated at 4701 Belair Road, Baltimore, Maryland (Baltimore City), 4861 Telsa Drive, Suite F, Bowie, Maryland (Prince George's County), and 2211 Commerce Road, Suite 6, Forest Hill, Maryland (Harford County). Trinity became a provider for services under Maryland Medicaid effective January 11, 2006, and on March 16, 2006, began to deliver and bill for services under the Program.

10. On June 2, 2005, as President of Trinity, INYANG signed a provider agreement to participate in Maryland's Medicaid program that provided in part:

    THE PROVIDER AGREES:

    That all claims submitted under his or her provider number shall be for medically necessary services that were actually provided as described in the claim. The Provider acknowledges that the submission of false or fraudulent claims could result in criminal prosecution and civil and administrative sanctions. This may include his or her expulsion from the Maryland Medical Assistance Program.

11. INYANG billed TI, IISS, Respite and Family Training services for participants who attended Trinity. INYANG

3

knew that her business could bill Medicaid only for services that were reasonable and necessary and that were actually rendered as billed to Medicaid.

12. Participants could receive services from Trinity before and after school and on school holidays and weekends. The location of the participant's residence and school determined whether they attended the Baltimore City, Prince George's County or Harford County facility. Baltimore City had the most participants, followed by Prince George's County. Program services were provided by technicians who were assigned to work with participants as they arrived at a facility on a given day or time. Some participants routinely worked with the same technician, however, sometimes assignments changed. Technicians could be assigned up to three participants to provide TI services.

Probable Cause

13. At some time in or about April 2007 through September 2012, INYANG knowingly and willfully devised and intended to devise a scheme or artifice to defraud Medicaid, and to obtain from Medicaid money or property by means of materially false or fraudulent pretenses, representations, or promises, well knowing that the pretenses, representations, or promises would be and were false when made.

14. Every week, Trinity technicians were expected to write on a timesheet the type and hours of services provided to each individual participant. A timesheet included lines for the participant's name and address and columns for the services (TI, IISS, FT and Respite) and days of the week from Sunday through Saturday, with spaces to write the date numerically, such as 5/21/12. The timesheet also contained rows so that the technician could enter the hours, including AM and PM, worked each day for each service with a participant. The timesheet included signature lines for the technician and the authorized client, usually the participant's parent.

15. Federal agents and State investigators interviewed several Trinity employees, who described how INYANG reviewed employees' timesheets and increased the number

of hours that technicians recorded on the timesheets to increase Medicaid billing. According to the employees, after technicians completed the weekly timesheets, INYANG or an employee selected, instructed, and directed by her would then overwrite with a marker the hours entered by technicians both to add hours for services on days where no hours had been recorded by the technician and to increase hours for services recorded by the technician.

16. INYANG would thus fraudulently increase the total numbers of hours billed for Trinity services from those hours that the technicians recorded as having actually provided. INYANG would also alter or direct an employee to alter timesheets to ensure fraudulent billing for the maximum allowed services, for example 20 hours of Therapeutic Integration per week and 25 hours of IISS per week, regardless of the hours of services actually provided. INYANG herself submitted the marked up fraudulent claims to a third-party contractor for submission to Medicaid. Thus INYANG billed Medicaid for services not rendered by Trinity.

17. On August 30, 2012, Federal and State law enforcement officers executed search and seizure warrants at Trinity's three office locations and INYANG's residence at 3744 Colliers Drive, Edgewater, Maryland 21037, where she resided with her husband, Usen Inyang. During the execution of the warrants, law enforcement officers seized hundreds of marked timesheets at Trinity's office locations and INYANG's residence as well as other documents that support the allegations.

18. Your affiant's review of seized timesheets and other documents confirmed the statements of Trinity employees. Timesheets on which technicians had written no time for services yet for which Trinity billed services were seized during the search. Most timesheets were dated between 2010 and 2012, with fewer from 2008 and 2009. Although COMAR regulations require maintaining records, including documentation of services provided, such as staff timesheets, for six years, INYANG had directed selected employees to shred marked up timesheets.

19. Documents also indicated that INYANG sought to maximize the number of hours billed to Medicaid to capture all hours allowed under COMAR even if the technician didn't enter any hours for those services

5

on the timesheet and the services were not rendered. For example, INYANG wrote on numerous timesheets: "How many Respite hours and family training hours does O. have left?," "how many Respite does he have left," "Redo this timesheet for billing max for TI and IISS" and similar-type comments.

20. INYANG also billed IISS and Respite services, required under COMAR to be provided on a one-to-one basis, on the same day and at the same time for siblings who also received Trinity services. In other words, one technician had worked with both siblings at the facility or home, but INYANG submitted fraudulent claims for one-on-one services.

21. Investigators analyzed a sample of the marked timesheets seized during the searches and confirmed that INYANG consistently and routinely billed Medicaid for services on days where the timesheets indicated no time entered by a Trinity technician for a particular service for the participant, yet in dark marker type ink, a number was written for one or more service codes that day. My review of the Medicaid claims database for Trinity revealed that the altered, marked-up entries were billed to and paid by Medicaid.

22. This false billing caused a significant loss to Medicaid. A review of a small sample of the seized marked-up timesheets identified at least $864,620.46 paid to Trinity for services not rendered. This amount was calculated from a sample of time sheets using only those lines on which no hours for services had been entered by the technicians. The amounts billed were compared to the amounts paid to confirm the fraudulent billing for services not rendered and the loss to Medicaid. Your affiant believes that further review of the timesheets seized during the searches will reveal greater losses to Medicaid arising out of payments to INYANG for services not provided.

23. On September 14, 2012, DHMH imposed Medicaid payment withholding on Trinity which was her primary source of revenue for her business.

24. In the second week of December 2014, INYANG and her attorney, signed a plea agreement with the United States Attorney's Office for the District of Maryland agreeing to plead guilty to a one-count Information charging her with health care fraud in violation of 18 U.S.C. Section 1347. INYANG also signed a Statement of Facts in which she admitted to the substantive

allegations outlined in paragraphs 6 through 23 above. A guilty plea was scheduled before the Honorable Ellen L. Hollander for January 21, 2015.

25. INYANG did not appear for the plea proceeding on January 21, 2015. Your affiant was present for the proceeding as was INYANG's attorney, Gina Simms. Ms. Simms advised government counsel before the proceeding that INYANG called Ms. Simms early that morning expressing suicidal ideations.

26. In a letter dated, January 29, 2015, INYANG's attorney informed the Honorable Ellen L. Hollander that despite several attempts to contact INYANG, she had not heard from INYANG since the early morning of January 21, 2015. Since January 21, 2015, further efforts have been made by law enforcement to locate INYANG to no avail.

Based on the information outlined above, there is probable cause to believe that Kathryn Inyang defrauded the Medicaid program, in violation of Title 18, U.S.C. Section 1347.

I affirm under penalty of perjury that the facts and circumstances outlined in this affidavit are true and accurate to the best of my knowledge and belief.

_____
Jason Marrero
Special Agent, HHS/OIG

Sworn to and subscribed before me on this __10th__ day of February 2015

_____
Stephanie A. Gallagher
US Magistrate Judge

7